# United States Navy-Marine Corps Court of Criminal Appeals

———————————

**UNITED STATES**
Appellee

**v.**

**Ramano T.A. RICKS**
Aviation Boatswain's Mate (Equipment) Airman Recruit (E-1),
U.S. Navy
Appellant

**No. 201700309**

Appeal from the United States Navy-Marine Corps Trial Judiciary.

Decided: 16 April 2019.

Military Judge:
Captain Ann K. Minami, JAGC, USN.

Sentence adjudged 19 July 2017 by a special court-martial convened at Naval Base Kitsap, Washington, consisting of a military judge sitting alone. Sentence approved by convening authority: confinement for five months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander Jon Taylor, JAGC, USN;*
*Captain Thomas R. Fricton, USMC.*

For Appellee:
*Lieutenant Allyson L. Breech, JAGC, USN;*
*Captain Sean M. Monks, USMC.*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

Before HUTCHISON, TANG, and LAWRENCE,
*Appellate Military Judges.*

Judge LAWRENCE delivered the opinion of the Court, in which Senior Judge HUTCHISON and Judge TANG joined.

LAWRENCE, Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to his pleas, of one specification each of desertion, resisting apprehension, fleeing apprehension, wrongful introduction of a controlled substance onto a military installation, and two specifications of wrongful possession of a controlled substance in violation of Articles 85, 95, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885, 886, 912a (2016).[1]

The appellant asserts three assignments of error (AOEs): (1) the appellant's actions were insufficient to support his conviction for resisting apprehension; (2) the evidence did not support the appellant's intention to remain away from his unit permanently, an element necessary to sustain his desertion conviction; and (3) the military judge erred in finding the appellant guilty of two separate specifications for possessing and introducing the same marijuana at the same time. Concerning the first two AOEs, we find no prejudicial error. We find plain error in the third AOE, set aside the lesser-included offense of possession of a controlled substance, and reassess the sentence.

## I. BACKGROUND

The appellant and his friend, a civilian contractor with base access, entered the gate at Naval Base Kitsap before 0600 on 18 April 2017, a weekday morning. The appellant was riding in the front passenger seat. They presented their identification cards to the gate guard who was conducting gate vehicle and occupant identification inspections. The gate guard smelled marijuana in the vehicle. Seeing a base police patrol vehicle approaching the gate, the gate guard directed the civilian contractor to pull his vehicle into the nearby inspection lane, and he informed the newly-arrived patrol officers that he had smelled marijuana coming from the vehicle. The patrol officers took over further investigation.

---

[1] The appellant pleaded guilty to a violation of Article 86, UCMJ, unauthorized absence for a two-day period, as a lesser-included offense of desertion. The military judge found the appellant guilty of the greater offense of desertion.

As Officer M approached the stopped vehicle, he too noted a "strong odor of marijuana coming from the vehicle."[2] Officer M asked the driver and the appellant several times if there was marijuana or anything else in the vehicle. Both the civilian contractor and the appellant denied that there was any contraband in the vehicle. Officer M asked the driver for consent to search the vehicle, and the driver consented. Officer M asked the driver and the appellant to get out of and stand behind the vehicle. Officer M then searched the vehicle while his partner watched over the vehicle, the appellant, and the driver.

During the search of the vehicle, Officer M found a green leafy substance, believed to be marijuana, "all over" the floor and the center console.[3] He also found rolling papers, a cigarette carton containing the remnants of a marijuana cigarette, and a shotgun shell. Officer M frisked the driver and the appellant. In the appellant's right front pants pocket, Officer M found a cellophane bag containing suspected marijuana. The bag bore the label of a Washington State-licensed cannabis company.

Officer M told the appellant he was under arrest for possession of marijuana. The circumstances of the appellant's arrest relate to his first assigned error and are discussed in detail below. Following processing, Officer M released the appellant to USS NIMITZ (CVN 68) beach detachment personnel, as the ship was at sea and the appellant was awaiting administrative separation related to other matters.

Three days later, on 21 April 2017, the appellant was ordered to report to the beach detachment office to review paperwork necessary for his separation. When he arrived, Senior Chief H, the ranking member of the beach detachment, showed him a pretrial confinement order signed by the NIMITZ commanding officer, which ordered the appellant into pre-trial confinement that day. Senior Chief H told the appellant that Petty Officer W would escort him to his barracks room so the appellant could pack the required uniform and personal items, after which point command members would escort him to the brig. The appellant protested, arguing that there was no proof he possessed marijuana since Officer M had released him without charges. Senior

---

[2] Record at 106.

[3] *Id.* at 107.

Chief H reassured the appellant that there was no misunderstanding. The appellant stated, "I'm not going to jail today."[4]

The appellant asked to make a cell phone call, and Senior Chief H allowed him to do so. The appellant was still on the phone when he left the beach detachment office, followed by Petty Officer W. The appellant walked away in the opposite direction of his barracks and quickly distanced himself from his escort. Petty Officer W could not keep up with the appellant and lost sight of him near the Navy Exchange. He called out the appellant's name but received no response. He briefly searched for the appellant in the Navy Exchange, but then returned to the beach detachment office and told Senior Chief H that he believed the appellant had fled. Senior Chief H informed the brig and the NIMITZ chain of command that the appellant had apparently fled, and he asked base security to prepare a "be on the lookout" (BOLO) advisement for the appellant. Then he closed up the office and, as it was a Friday afternoon, departed for the weekend.

Four days later, agents of the Naval Criminal Investigative Service (NCIS), acting upon the BOLO, received additional information that helped them identify the off-base hotel in the local area where they believed the appellant was staying. The hotel staff told the agents which room the appellant occupied, and, with the agents nearby, the hotel staff knocked on the door. When the appellant answered the door, the agents immediately noted the strong smell of marijuana in the room and took the appellant into custody.

The agents conducted additional interviews and suspected that there was additional marijuana in the appellant's hotel room. When they returned to search the room, they found that it had been cleared out. By reviewing the hotel's security footage, they determined that one of the appellant's friends entered the room after the appellant was taken into custody. The agents located and questioned this friend, who admitted that he had removed the appellant's items, including marijuana, from the room at the appellant's request. He said he stored the appellant's items in his own personal vehicle, which he permitted the agents to search. The agents recovered a bag of the appellant's personal items and two bags of commercially-packaged marijuana.

---

[4] *Id.* at 149.

4

## II. DISCUSSION

### A. Legal and Factual Sufficiency

In his first two AOEs, the appellant contends that his convictions for resisting apprehension and desertion were legally and factually insufficient. We review questions of legal and factual sufficiency *de novo*. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

To determine legal sufficiency, we review the evidence "in the light most favorable to the prosecution" and ask whether "a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 325 (C.M.A. 1987). In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61 (C.A.A.F. 2015) (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

In testing for factual sufficiency, we "weigh[] the evidence in the record of trial and mak[e] allowances for not having personally observed the witnesses" in order to determine whether we, ourselves, are "convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 324. We take a "fresh, impartial look at the evidence," without deference to the trial court's decision, and must "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

#### 1. Resisting apprehension

In order to sustain the conviction for resisting apprehension, the government must have proven beyond a reasonable doubt that: (1) a certain person attempted to apprehend the appellant; (2) that person had the authority to apprehend the appellant; and (3) the appellant actively resisted the apprehension. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (MCM), Part IV, ¶ 19.b.(1). To meet the third element, the government must have proven "active" resistance. Although the Manual provides one example of legally sufficient active resistance—specifically, assault upon the apprehending official—this is only one non-exhaustive example. So long as the resistance amounts to more than "[m]ere words of opposition, argument, or abuse," the act constitutes "active resistance." MCM, Part IV, ¶ 19.c.(1)(c).

The appellant does not contest the first two elements of the offense. There is no question that Officer M was employed and on duty as a civilian police officer for Naval Base Kitsap and that he attempted to apprehend the appellant. The appellant contends that the third element, the accused's active resistance to the apprehension, was not sufficiently supported by the evidence.

Specifically, the appellant argues that his actions were insufficient to constitute active resistance because he only "pulled away" from the officer "in order to face the officer and state that the officer could not arrest him without reading him his rights."[5] The appellant implicitly argues that this motivation for "pull[ing] away" from the officer makes his actions more akin to "mere words" than active resistance.[6] He further argues that the government failed to prove active resistance because the appellant did not "improperly touch[]", threaten, or assault Officer M.[7] We disagree.

Officer M testified that the appellant was initially compliant and allowed his right wrist to be secured in the handcuffs. But as he was attempting to secure the appellant's left hand, the appellant twice "pull[ed] away,"[8] removing his left wrist from Officer M's grasp, turned to face him, and told Officer M "[H]ell no, you are not doing this."[9] In order to fully secure the appellant in his handcuffs, Officer M had to grab the appellant, turn him around, and pin him against the hood of his patrol car several feet away. During cross-examination, Officer M conceded that he did not have to escalate beyond relatively minor use of force techniques in order to restrain the appellant.

The appellant testified in his own defense. In contrast with Officer M's testimony, the appellant stated he was "right in front" of the hood of the patrol car when Officer M first attempted to handcuff him. He testified that Officer M was behind him, using his legs to "pin[]" the appellant to the hood of the car.[10] The appellant repeatedly testified that he never turned to face Officer M but that he only "looked" at him and "couldn't turn all the way around."[11] The appellant testified he never pulled his hand away from Officer M but that "when [he] tried to turn around . . . [his] hand may have moved," but never in a "forceful manner," as Officer M described.[12] The appellant agreed he twice verbally protested his apprehension and that he voluntarily

---

[5] Appellant's Brief of 7 Mar 2018 at 7.

[6] *Id.*

[7] *Id.*

[8] Record at 111.

[9] *Id.* at 114.

[10] *Id.* at 327-29.

[11] *Id.* at 331.

[12] *Id.* at 332.

ceased his minor resistance.[13] The trial defense counsel and the appellant physically demonstrated the encounter as the appellant described it. Their demonstration apparently attempted to show that it was impossible for the appellant to turn around, when "pinned" to the patrol car, and ended with the trial defense counsel and the appellant being "2 inches apart, face-to-face with [the trial defense counsel's] hand remaining on [the appellant's hand] and almost in an embrace."[14]

The appellant and Officer M provided drastically different accounts of the apprehension. The appellant's account, should we choose to believe it, is that his hand only "moved" (not "forcefully") but never broke contact with Officer M's hand and that the appellant merely turned his head to the side while he was pinned to the patrol car hood.

However, in light of the conflicting testimony, we credit Officer M's account. We find that the appellant was not a credible witness. Although he made a sworn statement to NCIS after his arrest admitting that he purchased marijuana, during his trial testimony, the appellant denied purchasing marijuana.[15] Rather, he testified that he only admitted to purchasing the marijuana because he did not want his friends to get in trouble, and he just "told [NCIS] like what they wanted to hear" because he was frustrated and confused.[16]

On cross-examination, however, the appellant maintained that he did not lie to NCIS when he admitted purchasing marijuana. He conceded that he *did* purchase marijuana, but did so on a different day than the day about which he was being questioned. Therefore, during his sworn testimony at trial, the appellant simultaneously recanted his inculpatory NCIS statement while also claiming that his recanted NCIS statement was not actually false. At a minimum, the appellant admitted that he deliberately misled NCIS agents about the specific time period he knew they were asking about in order to exculpate his friends. Further, the appellant also testified that Officer M never recovered a marijuana wrapper from the appellant's pocket—

---

[13] See *id.* at 333 ("The first time I protested he was like, just calm down. The second time he was like, you don't want this to . . . escalate . . . so just calm down. And that's when I just stopped talking and I let him handcuff me and put [me] in the back of the car.").

[14] *Id.* at 330.

[15] *Id.* at 350.

[16] *Id.* at 351.

only a container of lip balm. We therefore do not find the appellant's testimony regarding his apprehension to be credible.

We reject the appellant's further argument that Officer M's restrained use of force necessarily proves the appellant did not actively resist. The record does not reveal the height, weight, and build of the appellant. But the gate guard testified that Officer M was approximately 6'4" in height, weighed approximately 250 pounds, was significantly taller and had a larger build than the appellant.[17] The height and stature difference rendered extreme force unnecessary, and officers *should* use the least force required. We likewise reject the appellant's argument that his movements were not active resistance since his *motivation* in moving was to communicate with Officer M face-to-face. Although the appellant conceded his hands "may have moved," based on the appellant's own description of his actions, they must have moved.[18]

Having reviewed the entirety of the record and considering the evidence in the light most favorable to the prosecution, we find that the military judge could have reasonably found that the appellant physically resisted apprehension. Additionally, we have weighed the evidence in the record anew, while making allowances for not having personally observed the witnesses, and are convinced beyond reasonable doubt of the appellant's guilt.

### 2. Intent to remain away permanently

The appellant was charged with desertion, terminated by apprehension, from 21-25 April 2017. He entered a plea of guilty to the lesser-included offense of a two-day period of unauthorized absence from 24-25 April 2017, terminated by apprehension, pursuant to Article 86, UCMJ. The government presented evidence to prove the greater offense of desertion, which required the additional proof that "at the time the absence began or at some time during the absence, [the appellant] intended to remain away . . . permanently." Art. 85(b)(1)(c), UCMJ. We find that the evidence presented by the government proved beyond a reasonable doubt this element and affirm.

The intent to remain away permanently may be proved by circumstantial evidence. *United States v. Oliver*, 70 M.J. 64, 66 (C.A.A.F. 2011); MCM, Part IV, ¶ 9.c.(1)(c)(iii). The MCM provides examples of potentially relevant, circumstantial evidence:

---

[17] *Id.* at 101-02.

[18] *Id.* at 332.

> [T]hat the period of absence was lengthy; that the accused at-
> tempted to, or did, dispose of uniforms or other military proper-
> ty; that the accused purchased a ticket for a distant point or
> was arrested, apprehended, or surrendered a considerable dis-
> tance from the accused's station; that the accused could have
> conveniently surrendered to military control but did not; that
> the accused was dissatisfied with the accused's unit, ship, or
> with military service; that the accused made remarks indicat-
> ing an intention to desert; that the accused was under charges
> or had escaped from confinement at the time of the absence;
> [or] that the accused made preparations indicative of an intent
> not to return (for example, financial arrangements) . . . .

MCM, Part IV, ¶ 9.c.(1)(c)(iii). Additionally, such an intent to remain away permanently "may be formed any time during the unauthorized absence" and "need not exist throughout the absence, or for any particular period of time, as long as it exists at some time during the absence." MCM, Part IV, ¶ 9.c.(1)(c)(i).

While this case does not present a long-term absence or great distances traveled before apprehension, the evidence establishes that the appellant formed the intent to absent himself and remain permanently away once he learned he was to be confined pending court-martial.

The appellant testified that he had no intent to evade Petty Officer W and that he was merely walking in a direction that would give him better cell phone reception. However, knowing that he was to be *escorted* to his barracks room to retrieve necessary items for pre-trial confinement, the appellant made no effort to stay within view of Petty Officer W. In fact, he went in the opposite direction of his barracks. He contends that, upon realizing Petty Officer W was not with him, he first returned to the beach detachment office and found it empty. He testified that he then waited at his barracks room, fully expecting either Petty Officer W or Senior Chief H to retrieve him. The appellant testified that he intended to return to the NIMITZ later that week on 28 April 2017 when it came back into port, claiming that he needed to have a discussion with his commanding officer to explain why the pre-trial confinement order was in error since there was not sufficient evidence to prove *he* possessed the marijuana found on 28 April 2017. For the reasons described above, we do not find the appellant's self-serving testimony credi-ble. Rather, we find ample evidence that the appellant intended to remain away permanently. On cross examination, the appellant had this exchange with the trial counsel:

> Q. So even though it was just for a short amount of time, you
> did intend to, to leave and not come back?

A. [Pause.] Yes.[19]

We find further evidence of the appellant's intent to remain away permanently in a phone call he made to his mother while in the NCIS interrogation room. His end of the conversation was recorded. While awaiting interview on 25 April 2017, the appellant called his mother and said he left the base *once he learned* he was going into pre-trial confinement. This directly contradicts his testimony that he remained in his barracks room that Friday night and only went to a hotel the following day.

We also infer his intent to remain away permanently from the fact that he evaded apprehension after being told he was being ordered into pre-trial confinement. He told Senior Chief H and Petty Officer W that he wasn't going to the "jail" that day. Then he walked away from his escort, Petty Officer W, and made no attempts to contact any authority from his ship. Further, on Monday, 24 April 2017, the first working day after learning of the confinement order, he did not report to work. Instead, he did not return to military custody and control until he was apprehended at the hotel.

After careful review of the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that the military judge could reasonably find that the appellant formed the intent to remain away permanently at the initial stages of his absence. Furthermore, after weighing all the evidence in the record of trial ourselves and having made allowances for not having personally observed the witnesses, we are convinced beyond reasonable doubt of the appellant's guilt.

## B. Multiplicity of the Drug Offenses on 18 April 2017

The appellant contends, and the government concedes, that Charge III, Specification 1—wrongful possession of controlled substance—is multiplicious with the greater offense under Charge III, Specification 2—wrongful introduction of a controlled substance. We agree.

Because this issue was not raised at the contested trial, we review for plain error. *United States v. Oliver*, 76 M.J. 271, 273-75 (C.A.A.F. 2017). Thus, the appellant must establish that the error is "clear or obvious" and that it "results in material prejudice to his substantial rights." *Id.* at 275. Here, the appellant possessed a single cellophane bag containing marijuana when he entered onto military property. That one act of possessing and intro-

---

[19] Record at 364.

ducing this same bag of marijuana on this same gate entry amounted to a single offense. *See United States v. Hendrickson*, 16 M.J. 62 (C.M.A. 1983).

Therefore, it was plain error to convict the appellant of both possession and introduction of the same marijuana simultaneous to his single entry to the base. Accordingly, we set aside the finding of guilty to Charge III, Specification 1, and that specification is dismissed with prejudice.

**C. Sentence Reassessment**

Having set aside the guilty finding to Charge III, Specification 1, we must determine if we can reassess the sentence "more expeditiously, more intelligently, and more fairly than a new court-martial." *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013) (internal quotation marks omitted). In reassessing sentences, we "act with broad discretion." *Id.*

So long as we are able to determine that the sentence imposed on the accused, absent the error, would have been at least of a certain magnitude and no higher than he would have received without the error, we may reassess the sentence. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). Any sentence we seek to affirm must be "appropriate," meaning it is not only "purged of prejudicial error [but] also . . . 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We look to the non-exclusive list of five factors in *Winckelmann* to determine whether to reassess a sentence or to order a sentencing rehearing: (1) whether there has been a dramatic change in the penalty landscape and exposure; (2) the forum of the court-martial; (3) whether the remaining offenses capture the gravamen of the criminal conduct; (4) whether significant aggravating circumstances remain admissible and relevant; and (5) whether the remaining offenses are the type with which we as appellate judges have experience and familiarity to reasonably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15-16.

Under all circumstances presented, we find that we can reassess the sentence and it is appropriate for us to do so. There is no change in the penalty landscape and exposure as the several remaining offenses committed by the appellant each subjected him to the jurisdictional maximum of the special court-martial. The appellant was sentenced by a military judge. The remaining offenses capture the gravamen of the criminal conduct for which the appellant was sentenced, and there is no change in admissible sentencing evidence. Additionally, we have significant experience and familiarity with the offenses that remain and conclude that sentence reassessment is appropriate. Absent the error, we are confident that the court-martial would have imposed a sentence no less severe than that approved by the convening authority—five months' confinement and a bad-conduct discharge. Finally, we

conclude the reassessed sentence purged the error from the original sentence and is an appropriate punishment for the modified findings and this offender. *Sales*, 22 M.J. at 308.

### III. Conclusion

The finding of guilty to Charge III, Specification 1 is **SET ASIDE** and that specification is **DISMISSED WITH PREJUDICE**. Thus, after careful consideration of the record and briefs of appellate counsel, we have determined that, following our corrective action, the remaining approved findings and the sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights remains. Arts. 59 and 66, UCMJ. Accordingly, the remaining findings and the sentence as approved by the convening authority, and as reassessed by this court, are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court